IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LEONETTE DAVIS-COLLINS,

        Plaintiff,

v.

CITY OF WILMINGTON; TANYA
WASHINGTON, individually and in her
official capacity; JENNIFER PRADO,
individually and in her official capacity;
CHARLOTTE BARNES, individually and in
her official capacity; SHEILA MARTIN,
individually and in her official capacity;
CHIEF ROBERT J. TRACY, individually
and in his official capacity; and KEITH
BROOKS,

        Defendants.

Civil Action No. 20-758-RGA

MEMORANDUM

    Before me are Defendants' Motion to Dismiss and for Summary Judgment (D.I. 6), and Defendants' Motion for Protective Order (D.I. 16). I have reviewed the parties' briefing. (D.I. 7, 11, 12, 17, 18, 19). For the reasons that follow, I will DENY Defendants' Motions for Summary Judgment on Counts I and II without prejudice; GRANT Defendants' Motion to Dismiss Count III; GRANT Defendants' Motion to Dismiss Count V; and DISMISS as moot Defendants' Motion for Protective Order.

1

I.  **BACKGROUND**[1]

Plaintiff Leonette Davis-Collins is employed by the City of Wilmington as Specialist in the Mayor's Office of Constituent Services. (D.I. 1 at ¶ 28). She began her employment with the City on December 8, 2008, as a Program Administrator in Real Estate and Housing. (*Id.* at ¶ 27). On March 3, 2017, while Plaintiff was in the mezzanine of the Louis L. Redding City/County Building, "Defendant Brooks surreptitiously snuck behind Plaintiff and put his penis on her buttocks, put his hand around her waist, pulled her close to him and tried to kiss her." (*Id.* at ¶ 29). Plaintiff immediately reported this sexual assault to Jennifer Prado, Director of the Mayor of Wilmington's Office of Constituent Services, and Tanya Washington, the City of Wilmington Mayor's Chief of Staff, and Ms. Prado and Ms. Washington failed to take any action. (*Id.* at ¶¶ 30–31). Plaintiff encountered Brooks again in May of 2017 and he attempted to talk to her. (*Id.* at ¶ 32).

On June 18, 2018, Plaintiff spoke with Sheila Martin, Human Resources Officer for the City of Wilmington, about her sexual harassment complaint against Brooks. (*Id.* at ¶ 33). Ms. Martin stated that Charlotte Barnes, Director of Human Resources, instructed her not to get involved. (*Id.*).

On July 23, 2018, Brooks approached Plaintiff again and stated, "Hello there again beautiful. You are just so gorgeous." (*Id.* at ¶ 34). About June 5, 2019, Plaintiff met with Ms. Martin to discuss the sexual harassment. (*Id.* at ¶ 35). After the meeting, Plaintiff encountered Brooks in the elevator, and Plaintiff was fearful of being sexually harassed so she quickly exited the elevator. (*Id.*). Plaintiff began to suffer from panic attacks, had trouble breathing, and was

---

[1] I state the facts as alleged by Plaintiff and in the light most favorable to her.

shaking and crying uncontrollably as a result of Brooks' actions. (*Id.* at ¶ 36). Plaintiff reported the elevator encounter to Ms. Martin, who stated, "Is that the one always saying Good Morning Beautiful and kissing everybody's hand?" (*Id.* at ¶ 37).

On August 15, 2019, the City contacted Plaintiff regarding her sexual harassment complaint, advising, "an investigation has been conducted and the matter has been closed. Based on our finding's harassment has not been found, however we did find Mr. Brooks acted inappropriate towards you. Since the City of Wilmington could not determine any employer for Mr. Brooks and the City has no jurisdiction over Mr. Brooks, it is recommended that you follow up with the Wilmington Police Department regarding your initial police report with them." (*Id.* at ¶ 38).

On October 11, 2019, Plaintiff encountered Brooks in the elevator, and he "made sexual noises" to Plaintiff, causing her to suffer from a panic attack and emotional distress. (*Id.* at ¶ 39). Plaintiff reported this incident to Ms. Denecca Guile, Compliance Specialist, who stated that Brooks should be using a different elevator. (*Id.* at ¶ 40). On November 7, 2019, the City informed Plaintiff, "An investigation has been conducted and the matter is now closed. . . . Please be aware that the Louis L. Redding City/County Building is a public building and it cannot be necessarily avoided that you and Mr. Brooks may see each other in passing, however you and Mr. Brooks should continue to avoid speaking to one another." (*Id.* at ¶ 42). Plaintiff was forced to take time off of work and use her vacation and sick time due to the emotional distress she was suffering as a result of Defendants' actions. (*Id.* at ¶ 44).

Plaintiff filed a police report with the Wilmington Police Department ("WPD") on May 22, 2017. (*Id.* at ¶ 47). Plaintiff made multiple attempts to contact the WPD regarding her report, but

received no response. (*Id.* at ¶¶ 48–52). On June 11, 2019, Plaintiff spoke to Records Supervisor Lisa Hemphill, who told her that her report was not officially filed with the WPD. (*Id.* at ¶ 53). Plaintiff received a copy of her police report on August 13, 2019; the report was dated July 31, 2019. (*Id.* at ¶ 54). Plaintiff filed a complaint with the WPD's Professional Standards Unit for failure to investigate her initial complaint of sexual assault, and this complaint was sustained. (*Id.* at ¶¶ 56-57).

On June 5, 2020, Plaintiff filed her Complaint (D.I. 1) against Defendants City of Wilmington, Tanya Washington, Jennifer Prado, Charlotte Barnes, Sheila Martin, Chief Robert J. Tracy (together, "Defendants"), and Keith Brooks for sexual harassment and hostile work environment (Count I), failure to train and supervise (Count II), civil conspiracy (Count III), violation of the Delaware Discrimination in Employment Act (Count V),[2] intentional infliction of emotional distress (Count VI), and invasion of privacy (Count VII). Defendants have moved for summary judgment on Counts I and II and to dismiss Counts III and V. (D.I. 6). Plaintiff agreed to voluntarily dismiss Count III. (D.I. 11 at 1). Thus, I will grant the motion to dismiss Count III with prejudice.

## II.   LEGAL STANDARDS

### A. Summary Judgment

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return

---

[2] There is no Count IV.

4

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to show that there is a "genuine issue for trial." *Id.* at 324. To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250.

"A District Court is 'obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.'" *Superior Offshore Int'l, Inc. v. Bristow Grp., Inc.*, 490 F. App'x 492, 501 (3d Cir. 2012) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 139 (3d Cir. 1988)). Federal Rule of Civil Procedure 56(d) sets forth the procedure when facts are unavailable to the nonmovant: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The Third Circuit has stated, "A properly filed motion must be

5

accompanied by 'a supporting affidavit detailing what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *Superior Offshore*, 490 F. App'x at 501 (citation omitted). Although, this three-factor test is "neither exhaustive nor exclusive and district courts ultimately have discretion in ruling on Rule 56(d) motions." *Square Ring, Inc. v. Doe-1*, 2014 WL 1116960, at *3 (D. Del. Mar. 18, 2014).

### B. Rule 12(b)(6) Motion to Dismiss

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's

6

liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## III. DISCUSSION

### A. Motion for Summary Judgment on Count I

In Count I of her Complaint, Plaintiff asserts a § 1983 claim against City of Wilmington, Ms. Washington, Ms. Prado, Ms. Barnes, Ms. Martin, and Chief Tracy for sexual harassment and hostile work environment. (D.I. 1). Plaintiff asserts that Defendants violated her rights secured by the Equal Protection Clause of the Fourteenth Amendment "to be free from sex discrimination in public employment." (*Id.* at ¶¶ 60–61).

Defendants have moved for summary judgment on Count I on the following grounds: (1) Plaintiff has not alleged facts sufficient to show purposeful discrimination based on her gender; (2) Ms. Prado, Ms. Martin, Ms. Barnes, Chief Tracy, and Ms. Washington, in their individual capacities, are entitled to qualified immunity; and (3) Plaintiff has not alleged facts sufficient to establish municipal liability under § 1983.

Plaintiff asks the court to defer considering or deny the motions for summary judgment under Fed. R. Civ. P. 56(d) because she has not been able to obtain discovery. (D.I. 11 at 6). Plaintiff filed a sworn affidavit stating that she cannot present facts to justify her opposition because many of the documents and information that she needs are within the possession or control of Defendants. (D.I. 11, Ex. A). She states, "The additional facts and information essential to justify my position include but are not limited to the following: the details of Defendants['] purported investigation into my claims of sex discrimination and harassment, deposition testimony of Defendants on its policies and procedures including its implementation of said policies and

7

procedures, and discovery information on other individuals similarly situated to myself to support my sex discrimination claims." (*Id.*). I will address Plaintiff's Rule 56(d) argument in the context of each of Defendants' summary judgment arguments.

### 1. Purposeful Discrimination Based on Sex

To succeed on her § 1983 claim for denial of equal protection, Plaintiff "must prove the existence of purposeful discrimination" by demonstrating that she "received different treatment from that received by other individuals similarly situated." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990) (cleaned up). To prove sexual discrimination, Plaintiff "must show that any disparate treatment was based upon her gender." *Id.* To establish individual liability, "there must be some affirmative conduct by the [individual] that played a role in the discrimination." *Id.* Plaintiff can show this conduct "through allegations of personal direction or of actual knowledge and acquiescence." *Id.* (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In her Complaint, Plaintiff alleges that Defendants knew of the sexual harassment and "consciously acquiesced to the known sexually discriminatory and harassing conduct by Defendant Brooks by willfully failing to respond to it or take any action." (D.I. 1 at ¶¶ 62, 64). Defendants argue that Plaintiff has not alleged, and the evidence is not sufficient to establish, that Defendants' inaction was purposeful and based on her gender. (D.I. 7 at 7). Defendants do not point to any affidavits or exhibits that support their argument, instead relying solely on the face of the Complaint. Their motion is argued as a Rule 12(b)(6) motion to dismiss. (*See id.* (arguing that the allegations in the Complaint "are insufficient to state an Equal Protection claim"). I am not sure why Defendants filed this motion as one for summary judgment. I will deny this motion

because summary judgment is premature. Plaintiff is entitled to obtain discovery to determine facts related to Defendants' investigation of her claims of sexual harassment and their treatment of similarly situated individuals.

### 2. Qualified Immunity

Defendants argue that the claims against Ms. Washington, Ms. Prado, Ms. Barnes, Ms. Martin, and Chief Tracy in their individual capacities should be dismissed because they are entitled to qualified immunity. (D.I. 7 at 8–10). Qualified immunity protects government officials from insubstantial claims in order to "shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity shields government officials from liability for civil damages unless the plaintiff shows: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011).

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, 'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 741 (cleaned up) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "In other words, there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001).

Defendants argue that Plaintiff cannot establish a violation of the Fourteenth Amendment, and even if she could, Plaintiff's right was not clearly established because there is no established

response under the Constitution to a sexual harassment claim against a non-employee. (D.I. 7 at 9) (citing *Foster v. Twp. of Hillside*, 780 F. Supp. 1026, 1046 (D.N.J. 1992)). Plaintiff responds, "At this stage in the pleadings, there is a clear dispute of fact as to whether or not Defendants properly responded to Plaintiff's complaint." (D.I. 11 at 10). Plaintiff contends that she needs to obtain discovery to determine the extent of Defendants' knowledge and conduct. (*Id.*). Defendants respond that further discovery is unnecessary for a determination of qualified immunity. (D.I. 12 at 6).

I appreciate that "qualified immunity is not a mere defense from liability; it is 'an entitlement not to stand trial or face the other burdens of litigation,'" and that "the Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stages of litigation." *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Nevertheless, "a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Id.* at 278; *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) ("[I]t is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases.").

The parties dispute whether Defendants appropriately responded to Plaintiff's complaints of sexual harassment and the extent of their knowledge. Thus, there is a genuine dispute of material fact as to the determination of whether Defendants acted reasonably in response to Plaintiff's complaints and whether a reasonable official would have understood that Defendants' actions violated Plaintiff's clearly established right to be free from sexual discrimination in the workplace. *See Andrews*, 895 F.2d at 1479 ("[T]he right to be free of discrimination based upon

10

sex in the workplace[] was well grounded in law and widely known to the public by 1986 . . . ."). Plaintiff is entitled to obtain discovery to identify facts relevant to this determination. Thus, I will deny Defendants' summary judgment motion on the issue of qualified immunity because it is premature. *See Suero v. Watkins*, 2016 WL 8716667, at *8–10 (E.D. Pa. Feb. 12, 2016) (denying summary judgment on qualified immunity grounds because "a determination as to whether Defendants' use of force was objectively reasonable cannot be made until after some discovery").[3]

### 3. Municipal Liability

Defendants argue that Plaintiff's factual allegations are insufficient to establish municipal liability under § 1983. (D.I. 7 at 10–11). A municipality may only be held liable under § 1983 where it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that "inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In other words, for a municipality to be liable for a deprivation of constitutional rights, the deprivation of rights must be a result of an unconstitutional custom or policy, or a constitutional custom or policy that is the "moving force" behind the unconstitutional actions of an employee. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981); *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991). A municipality may not be held liable under § 1983 solely on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. A municipality may be liable for an injury caused "by the decision or action of

---

[3] In their reply brief, Defendants state, "The Court in *Suero* found that sufficient information had been provided by all parties to clearly show that the individuals facing liability were acting in their official capacities, and thus protected by qualified immunity." (D.I. 12 at 7). This is incorrect. Defendants cite the portion of the *Suero* opinion where the Court found that the individual defendants had absolute immunity from common law torts because they were acting in their official capacities. *Suero*, 2016 WL 8716667, at *10. The *Suero* court did not grant summary judgment on qualified immunity grounds, instead "find[ing] that discovery is necessary before making a decision on qualified immunity." *Id.* at *12.

an official policymaker acting in an area in which he had final decision making authority." *Izquierdo v. Sills*, 68 F. Supp. 2d 392, 408 (D. Del. 1999).

Plaintiff alleges, "Defendants acted with deliberate indifference to Plaintiff's rights, in failing to intervene to stop the unlawful conduct, in failing to properly control Defendant Brooks, and in failing to remedy Defendant Brook's conduct after they learned about it." (D.I. 1 at ¶ 61). Defendants argue that Plaintiff has failed to allege facts sufficient to establish a course of conduct that rises to the level of a custom or policy to support municipal liability. (*Id.*). They contend that there is no municipal liability because the City had an anti-harassment policy in place on March 3, 2017 (D.I. 8, Ex. A) and investigated all the incidents reported by Plaintiff. (D.I. 7 at 11). Defendants argue that the City has "extensive policies" and does not have control over Brooks, a non-employee, so the City is not deliberately indifferent. (D.I. 12 at 9).

While I am doubtful that Plaintiff has plausibly alleged conduct that rises to the level of a custom or policy to support municipal liability, this is not a motion to dismiss. Summary judgment is premature. Thus, I deny summary judgment on municipal liability grounds.

### B. Motion for Summary Judgment on Count II

In Count II of her Complaint, Plaintiff asserts a second § 1983 claim against Defendants for failure to train and supervise. (D.I. 1). Defendants move for summary judgment on Count II on the following grounds: (1) Plaintiff has not alleged facts sufficient to show that Defendants failed to provide adequate training and supervision; (2) Plaintiff has not alleged facts sufficient to establish municipal liability under § 1983; and (3) Ms. Prado, Ms. Martin, Ms. Barnes, Chief Tracy, and Ms. Washington, in their individual capacities, are entitled to qualified immunity.

### 1. Inadequate Training or Supervision

In Count II, Plaintiff alleges that Defendants "failed to establish appropriate policies and procedures and appropriately train and supervise its employees . . . on the investigation and prevention of sexual harassment and assault in the workplace and within Wilmington Police Department." (D.I. 1 at ¶¶ 68–73).

Defendants dispute this allegation, pointing to the City's HR policy, which has been in place since July 2, 2013 and "details extensive procedures for the investigation and response by supervisors regarding any sexual harassment complaints." (D.I. 7 at 11–12; D.I. 8, Ex. A). They also state that the City has adopted the Delaware Sexual Harassment Notice, and Ms. Washington, Ms. Prado, and Ms. Barnes received training regarding this policy on June 17, 2019, while Plaintiff and Ms. Martin were trained on October 2, 2019. (D.I. 7 at 12; D.I. 8, Exs. I, J).

Plaintiff also alleges that Chief Tracy "failed to establish appropriate policies and procedures and appropriately train and supervise officers when faced with complaints of sexual assault." (D.I. 1 at ¶ 73). Defendants refute this allegation, citing the WPD's many policies and procedures for dealing with complaints of sexual assault. (D.I. 8, Exs. K, L, M).

Plaintiff responds, "Proof of anti-harassment policies and a party's receipt of said policies cannot be considered conclusive evidence that Defendants followed those policies and at the very least creates a genuine dispute of fact as to whether or not Defendants followed their policies in its deficient investigation into Plaintiff's claims." (D.I. 11 at 13–14). Plaintiff also points out that many of Defendants' exhibits post-date Plaintiff's complaints of sex discrimination. (*Id.* at 14). For example, Defendants' exhibits show that officers were trained in 2019, but Plaintiff filed her original police report on March 22, 2017. (*Id.*). Plaintiff also asserts that she needs to obtain

discovery in order to present facts justifying her opposition. (*Id.*). Defendants argue that further discovery will not change the fact that Plaintiff's Complaint failed to identify any specific training deficiencies.[4] (D.I. 12 at 9).

The first incident of sexual harassment occurred on March 3, 2017, but Defendants do not provide any evidence of training prior to 2019. Defendants' exhibits only include Defendants' and Plaintiff's acknowledgment forms of the Delaware Sexual Harassment Notice in 2019 (Exs. I, J) and officer training records for 2019. (Ex. M). Thus, there is a genuine dispute of material fact as to the determination of whether Defendants adequately trained its employees to respond to complaints of sexual harassment during the relevant times. Plaintiff is entitled to obtain discovery of facts relevant to this issue. Thus, I will deny Defendants' motion for summary judgment on these grounds.

### 2. Municipal Liability

Defendants argue that Plaintiff has failed to allege any municipal liability. (D.I. 7 at 12–14). To succeed in a § 1983 claim against a municipality for failure to train, Plaintiff "must identify a failure to provide specific training that has a causal nexus with . . . her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Colburn*, 946 F.2d at 1030. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

---

[4] As I noted *supra*, Defendants' motion is one for summary judgment, and not a motion to dismiss.

14

Defendants contend that Plaintiff failed to identify any specific training deficiencies in her Complaint, which is required for municipal liability for failure to train. (D.I. 7 at 13). They argue that the exhibits show that the City had "robust policies regarding sexual harassment" and that Defendants "were trained regarding these policies." (*Id.*).

As mentioned *supra*, Defendants provide no evidence of its training procedures prior to 2019, so there is a genuine dispute as to whether Defendants adequately trained its employees during the relevant times. Plaintiff is entitled to obtain discovery to determine whether Defendants failed to train its employees or acted with deliberate indifference.[5] Thus, I deny summary judgment on municipal liability grounds.

### 3. Qualified Immunity

Defendants also argue that Count II against Defendants in their individual capacities must be dismissed under the doctrine of qualified immunity for the same reasons they assert in their motion for summary judgment on Count I. (D.I. 7 at 14–15).

There is a dispute as to the adequacy of the training provided by Defendants and whether a reasonable official would have understood that the Defendants' actions violated Plaintiff's clearly established right to be free from sexual discrimination in the workplace. Plaintiff is entitled to obtain discovery to identify facts relevant to this determination. Thus, I will deny Defendants' summary judgment motion on the issue of qualified immunity because it is premature.

---

[5] Defendants also argue that Plaintiff's claims against Ms. Washington, Ms. Prado, Ms. Barnes, Ms. Martin, and Chief Tracy, in their official capacities, must fail for the same reason that Plaintiff's claims against the City fail. (D.I. 7 at 13–14). Because I deny Defendants' motion for summary judgment on municipality liability, I need not address this argument.

15

### C. Motion to Dismiss Count V

In Count V of her Complaint, Plaintiff brings a claim against the City for discrimination based on sex "including, but not limited to, subjecting her to sexual harassment and a hostile work environment and refusing to adequately investigate her claims of sexual harassment and discrimination" in violation of the Delaware Discrimination in Employment Act ("DDEA"), DEL. CODE ANN. tit. 19, § 711(a). (D.I. 1 at ¶¶ 89–90). The City has moved to dismiss Count V for failure to state a claim.

To succeed on a hostile work environment claim under Title VII of the Civil Rights Act of 1964 and the DDEA,[6] Plaintiff must show that (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person in that position; and (5) the existence of *respondeat superior* liability. *Andrews*, 895 F.2d at 1482. "It is well established that a plaintiff can demonstrate a violation of Title VII by proving that sexual harassment created a hostile or abusive work environment." *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 293 (3d Cir. 1999). For sexual harassment to be actionable, it "must be sufficiently severe or pervasive 'to alter the conditions of the victim's employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (cleaned up). Thus, to withstand a motion to dismiss, Plaintiff must plausibly allege facts to support a reasonable inference that the sexual harassment was "severe or pervasive."

---

[6] "The DDEA's language 'is substantially the same as' Title VII's; and Delaware courts have repeatedly held that case law interpreting Title VII is relevant to any state law discrimination claim." *Wagenhoffer v. Visionquest Nat'l Ltd.*, 2016 WL 3947952, at *3 (Del. Super. Ct. July 14, 2016).

16

"To determine whether a hostile work environment is sufficiently severe or pervasive, the court must look at all the relevant circumstances surrounding the discriminatory conduct." *Arasteh v. MBNA Am. Bank, N.A.*, 146 F. Supp. 2d 476, 494–95 (D. Del. 2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "The court should judge the objective severity of the harassment and can consider (1) the frequency, (2) the severity, (3) whether it is physically threatening or humiliating (rather than an offensive utterance), (4) whether it unreasonably interferes with employee's work performance and (5) the effect on employee's psychological well-being. No single factor is required or dispositive." *Id.* at 495 (citing *Harris*, 510 U.S. at 23).

The City argues that Plaintiff has failed to allege a *prima facie* hostile work environment claim because Plaintiff's allegations are not sufficient to establish that the sexual harassment was severe or pervasive. (D.I. 7 at 17–20). It argues, "a reasonable person under the same or similar circumstances would not be affected by Mr. Brooks' alleged conduct." (*Id.* at 18). The City contends that the incidents of harassment were "isolated and sporadic, thus failing the frequency factor test." (*Id.* at 19; D.I. 12 at 3). The City further asserts that all but the first of the encounters "involved mere greetings" or Mr. Brooks ignored Plaintiff altogether. (D.I. 12 at 3).

Plaintiff alleges five incidents of harassment[7] by Defendant Brooks while at work: (1) on March 3, 2017, while in the mezzanine of her building, Brooks sexually assaulted[8] Plaintiff; (2) in May of 2017, Plaintiff encountered Brooks in the mezzanine and he attempted to talk to her; (3) on

---

[7] In her brief, Plaintiff cites two additional acts of sexual harassment on January 29, 2019 and November 25, 2019. (D.I. 11 at 17). The only reference to these incidents in the Complaint is a citation to the Delaware Department of Labor's finding, "Charging Party alleged she was sexually harassed by a third-party employee on January 29, 2019." (D.I. 1 at ¶ 21). I cannot draw any reasonable inference of liability based on this general assertion, so I will not consider these acts of sexual harassment.

[8] "Unlawful sexual contact in the third degree is a class A misdemeanor." DEL. CODE ANN. tit. 11, § 767.

17

July 23, 2018, Brooks approached her and stated, "Hello there again beautiful. You are just so gorgeous"; (4) on June 5, 2019, Plaintiff encountered Brooks in the elevator; and (5) on October 11, 2019, Plaintiff encountered Brooks and he "made sexual noises" to Plaintiff.[9] (D.I. 1 at ¶¶ 23, 29, 32, 34, 35, 39).

Accepting Plaintiff's factual allegations as true, I cannot reasonably infer that the sexual harassment was severe or pervasive. Plaintiff plausibly alleges inappropriate physical contact by Brooks on March 3, 2017. But the City had no way of anticipating or preventing this sexual assault by a non-employee in a public space, so this assault cannot be attributed to the City. The remaining incidents only involve Brooks attempting to talk with Plaintiff or Brooks simply being in the same place as Plaintiff. These incidents span over the course of two years and are isolated and sporadic. "Off-hand comments and isolated incidents (unless they are extremely serious) are not sufficiently severe or pervasive to amount to discriminatory changes in the terms and conditions of employment." *James v. A.C. Moore Arts & Crafts Inc./Sbar's Inc.*, 2019 WL 1004480, at *5 (D. Del. Mar. 1, 2019) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). I cannot conclude that these isolated incidents, even when considered collectively, are sufficiently severe to amount to a change in the terms and conditions of employment. *See, e.g., Molchan v. Delmar Fire Dep't, Inc.*, 2020 WL 264142, at *4 (D. Del. Jan. 17, 2020) (dismissing a hostile work environment claim because isolated incidents of the harasser placing his hand inside the plaintiff's thigh and on the plaintiff's buttocks did not rise to the level of severity necessary to support Title VII liability).

---

[9] Although the City states that the October 11, 2019 surveillance video shows that Brooks ignored Plaintiff altogether (D.I. 7 at 4–5; D.I. 12 at 3), I must accept the complaint's factual allegations as true. *See Twombly*, 550 U.S. at 555–56.

Brooks' physical contact with Plaintiff is unacceptable, especially in the workplace, but the standard under Title VII and the DDEA is more demanding. *Faragher*, 524 U.S. at 788 ("These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"). The unforeseen sexual assault by a non-employee in a public space is not actionable, and the subsequent sporadic interactions do not constitute severe or pervasive harassment. Plaintiff failed to plausibly allege that she was subjected to severe or pervasive sexual harassment that created a hostile work environment. Thus, I grant the City's motion to dismiss Count V of the Complaint.[10]

### D. Motion for Protective Order

Defendants also move for a protective order to stay discovery until this Court resolves their dispositive motions. I have resolved Defendants' motions to dismiss and for summary judgment. Thus, I dismiss Defendants' Motion for a Protective Order (D.I. 16) as moot.

### IV. CONCLUSION

An appropriate order will issue.

Entered this 30th day of September, 2021.

*/s/ Richard G. Andrews*
United States District Judge

---

[10] The City also argues that Plaintiff has failed to meet the statutory prerequisites for filing this action under DEL. CODE ANN. tit. 19, § 714. (D.I. 7 at 16–17). Since I will grant the motion to dismiss on other grounds, I need not address this argument.

19